UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Frost, Jr., #301382, | ) C/A No. 5:11-2520-JFA-KDW |
|                     Plaintiff, | ) |
| v. | ) Report and Recommendation |
| South Carolina Dept. of Corrections, Director Bill Byers, Levern Cohen, Warden, Ms. Montouth, I.G.C., Captain Best, in their individual and official capacity, | ) |
|                     Defendants. | ) |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this action alleging "infringement upon religious freedom, discrimination, due process violation, [and] depriv[ation] of equal protection of the law." ECF No. 1 at 2 (additional punctuation omitted). Plaintiff also asserts claims for failure to properly process his grievances and for violations of the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). ECF No. 12.

This matter is before the court on Defendants' Amended Motion for Summary Judgment filed on January 21, 2013, ECF No. 88, as well as Plaintiff's Motion to Dismiss and Motion for Default Judgment, ECF No. 114, which he filed on May 7, 2013. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on January 22, 2013, advising Plaintiff of the importance of motions for summary judgment and of the need for him to file an adequate response to Defendants' Motion for Summary Judgment. ECF No. 89. Defendants responded to Plaintiff's Motion to Dismiss and Motion for Default Judgment on May 24, 2013, ECF No. 115. Plaintiff

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which requires that the court provide explanation of dismissal/summary judgment procedures to pro se litigants.

responded to Defendants' summary judgment motion on August 7, 2013.[2] ECF No. 136. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because these motions are dispositive, a Report and Recommendation is entered for the court's review.

  I.   Defendants' Motion for Summary Judgment

     A.  Factual Background

Plaintiff Robert Frost, Jr. ("Plaintiff") is an inmate currently incarcerated at Kershaw Correctional Institution. During the time period relevant to his Complaint, Plaintiff was an inmate housed at Lieber Correctional Institution and Ridgeland Correctional Institution. ECF

---

[2] Plaintiff's original deadline to respond was February 25, 2013. ECF No. 88. On March 6, 2013, the court issued an order permitting Plaintiff to engage in limited discovery and giving Plaintiff until May 6, 2013 to respond to Defendants' Amended Motion for Summary Judgment. ECF No. 102. Plaintiff failed to respond to Defendants' Amended Motion for Summary Judgment and instead filed a Motion to Dismiss and Motion for Default Judgment. ECF No. 114. Plaintiff filed two additional motions in June 2013. *See* ECF Nos. 116, 118. In reviewing these motions, the court noted that they did not contain substantive arguments opposing Defendants' summary judgment motion. Plaintiff was given an opportunity to file a more comprehensive response by July 26, 2013. ECF No. 125. Instead of providing a substantive response to Defendants' Motion, on July 24, 2013, Plaintiff filed a Response stating that because he was confined in the SMU and did not have access to certain legal materials, he was unable to file an adequate response. ECF No. 130. In their Reply, Defendants indicated that they did not object to allowing Plaintiff additional time to respond to their Motion. ECF No. 131 at 2. Defendants further asserted that their counsel had spoken with counsel for SCDC who assured them that Plaintiff would be allowed access to Westlaw if he so desired. *Id.* Because Plaintiff was in SMU and alleged he was unable to adequately research and respond to Defendants' Amended Motion for Summary Judgment, with Defendants' consent, the court granted Plaintiff additional time to file a response. ECF No. 132. Plaintiff's Response, which was filed on August 7, 2013, consists of a letter informing the court that he is unable to respond to the Defendants' pending motion because he could not find "Title 18 USCA Fed Rules of Civil Procedure on the West Law Computer" and requests that the court appoint him counsel. ECF No. 135. The undersigned notes that Plaintiff has had approximately six months to prepare a response to the pending summary judgment motion, and has failed to do so. Accordingly, the undersigned will consider the arguments made in Plaintiff's Motion to Dismiss, ECF No. 114, in its recommendation to the court.

No. 1 at 3.  Plaintiff filed his initial Complaint on September 21, 2011.  ECF No. 1.  He submitted an Amended Complaint on October 26, 2011, which the court permitted to be filed and served.  ECF No. 15.  Plaintiff's Complaint alleges Defendants violated his freedom of religion, failed to process Plaintiff's grievances, and failed to provide an adequate grievance process all in violation of the United States Constitution and the RLUIPA.  ECF No. 1 at 6-7; ECF No. 1-6 at 1.  Specifically, Plaintiff contends that he is a Muslim whose "religious faith is Islam" and that while he was housed at Ridgeland he "was not provided a clean room or area where he and other Muslims could make [congregational] prayer" although there were empty rooms available. ECF No. 1 at 3.  Plaintiff alleges that he "could not use his room for prayer, because his other two roommates traveled back and forth making use of a cell no bigger than the average house bathroom."  *Id.*  Plaintiff further argues that on July 30, 2010 "Defendant Captain Best prevented him from participating in his religious service called Al-Jummah" although other Muslims similarly situated were permitted to attend.  *Id.*  Plaintiff also contends that Defendants "demonstrated a pattern of religious discrimination towards [] Plaintiff" when Defendants intercepted a Holy Quran that was mailed to Plaintiff from a South Carolina bookstore and would not return the Quran to Plaintiff.  *Id.*  Plaintiff alleges that "S.C.D.C. has not once offered Plaintiff an explanation for the herein mention constitutional violations."  *Id.*  Plaintiff also argues that SCDC has "failed to hire an Imam (clergy) [at every institution] to serve the needs of the Shia community within S.C.D.C," when there is "a Christian chaplain assigned [] to meet the religious needs of Christians at each" SCDC institution.  *Id.* at 4.  Plaintiff finally asserts that Defendant Montouth "refused to process Plaintiff's grievance even though he had initiated the

3

correct process." *Id.* at 4. Plaintiff seeks compensatory and punitive damages, and injunctive relief. *Id.* at 5-6.

### B. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of

proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

### C. Analysis

#### 1. Failure to Exhaust

Defendants contend that they are entitled to summary judgment on Plaintiff's claims regarding the number of Shia Imams at SCDC institutions because Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). ECF No. 88-1 at 8. Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). "[T]hose remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "'using all steps that the agency holds out, and doing so *properly*[.].'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

*Jones v. Bock*, 549 U.S. 199, 218 (2007).  Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies.  *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

Defendants offer the affidavit of Angela Hardin, SCDC Inmate Grievance Administrator, in support of their failure to exhaust argument.  ECF No. 88-3.  Ms. Hardin attests that she has reviewed the 127 grievances filed by Plaintiff "[f]rom the first date of [Plaintiff's] incarceration through November 28, 2011," and Plaintiff "has not filed a grievance regarding the number of imams or their ability to cater to the Shia Muslim community within SCDC."  ECF No. 88-3 at 3.  Plaintiff has not offered any opposition to Defendants' exhaustion arguments, accordingly, the undersigned recommends summary judgment be granted on these claims.

### 2.   Money Damages not Authorized under the RLUIPA

Defendants contend that they are entitled to summary judgment on Plaintiff's RLUIPA claims because "the only remedy [Plaintiff] seeks for his RLUIPA claims is money damages" and RLUIPA does not permit such claims against individuals for money damages.  ECF No. 88-1 at 9-10. The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). The Fourth Circuit has held that the RLUIPA does not permit claims for money damages against officials sued in their individual or official capacities.  *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009).   Because Plaintiff has only sought monetary damages for the alleged violations of RLUIPA, the undersigned recommends that summary judgment be granted on this claim.

3. Eleventh Amendment

Defendants contend that Plaintiff's actions against them should be dismissed as a matter of law to the extent they are sued in their official capacities. ECF No. 88-1 at 10. The undersigned agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

As SCDC is a department of the state of South Carolina, and the individual Defendants, as employees of SCDC, are agents or employees of the State of South Carolina when acting in their official capacities, the Defendants are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

4. Qualified Immunity

Defendants assert that they are entitled to qualified immunity for all claims against them in their individual capacities. ECF No. 88-1 at 10-11.  The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow*, 457 U.S. at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case -- that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted -- then the law affords immunity from suit."  *Id.*  (citations and internal quotation omitted).

a. Director Byers

Defendants contend that they are entitled to summary judgment on Plaintiff's claims against Defendant Byers because Plaintiff has not made any allegations against Defendant Byers

8

and Defendant Byers cannot be held liable on a theory of vicarious liability. ECF No. 88-1 at 11. To state a claim against a defendant in their individual capacity, a plaintiff must affirmatively show that the defendant acted personally in the deprivation of the plaintiff's constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Leatherwood v. Ozmint*, No. Civ. A. 2:10-0048, 2010 WL 4644444 at *6 (D.S.C. Oct. 8, 2010). In this case, Plaintiff provides no facts to indicate any personal involvement by Defendant Byers in his freedom of religion or grievance claims. Thus, it appears Plaintiff is suing Defendant Byers in a supervisory capacity. Generally, the doctrine of vicarious liability is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, *Reed v. Slakan*, 470 U.S. 1035 (1985). Plaintiff's Complaint contains no facts regarding Defendant Byers which would satisfy the above criteria. As Plaintiff fails to state a cognizable claim against Defendant Byers in his individual or supervisory capacity, it is recommended that summary judgment be granted on this ground.

b. Allegations regarding Quran

Defendants assert that Plaintiff's claims regarding the Quran should be dismissed because "[Plaintiff's] complaint is only directed towards SCDC" and SCDC is entitled to sovereign

immunity on Plaintiff's § 1983 claims. ECF No. 88-1 at 15. Defendants also contend that summary judgment should be granted because the confiscation of the Quran "occurred while [Plaintiff] was incarcerated at Lieber, not Ridgeland, [and] none of the individually-named Defendants in this action were involved in this incident." *Id.* The undersigned recommends that summary judgment be granted on this claim because SCDC is entitled to sovereign immunity on Plaintiff's § 1983 claims, and there is no evidence before the court that the individually named Defendants were personally involved with the confiscation of the Quran.[3] *See Leatherwood,* 2010 WL 4644444 at *6.

### 5. Freedom of Religion[4]

Defendants contend that they are entitled to summary judgment on Plaintiff's freedom of religion claim. ECF No. 88-1 at 18. The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Imprisonment may limit, but not completely abrogate, a prisoner's right to the free exercise of his religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnson*, 334 U.S. 266, 285 (1948). For that reason, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Where prison officials demonstrate that they are pursuing a legitimate governmental objective, and show a "minimally rational relationship between that objective and the means

---

[3] *See* Inmate Grievance Form, dated November 28, 2006 that indicates a Quran was confiscated while Plaintiff was housed at Lieber Correctional Institution. ECF No. 1-4 at 16.

[4] Included in Plaintiff's Freedom of Religion Claim is an assertion concerning the confiscation of a Quran and the number of Shia Imams, which the undersigned recommended be dismissed on other grounds, *supra*. Accordingly, the undersigned has not addressed the merits of these claims in this section.

chosen to achieve that objective," the means must be upheld. *Hines v. South Carolina Dep't of Corr.*, 148 F.3d 353, 358 (4th Cir. 1998).

Addressing Plaintiff's claims concerning Defendant's failure to provide him with a clean room or area where Plaintiff could offer his "five obligatory prayers a day," Defendants contend that there was a "lack of a suitable area for Muslims to congregate" and the empty rooms that Plaintiff identified were actually empty cells which were not appropriate for inmates to congregate due to the security concerns of the facility. ECF No. 88-1 at 20. Defendants further argue that it is impractical for Muslim inmates to gather in the chapel five times a day due to other functions that occur in the chapel, and that Plaintiff had an "alternative means of exercising his religious rights" as Plaintiff's daily prayers could be made individually. *Id.* at 20-22.

Concerning Plaintiff's allegations that Defendant Best prevented him from attending the Jumu'ah service on July 30, 2010, Defendants contend that Ridgeland's controlled movement system permits inmates to move from one area of the facility to another area only at designated times. ECF No. 88-1 at 22. If an inmate is not present for Jumu'ah "at the designated cut-off time, the inmate is not permitted to attend the service." *Id.* Defendants argue that this practice "allows the officers to maintain security and control over the institution" and that Plaintiff has alternative means for exercising his rights by either "being on time for service or [] by individually performing the daily prayers the Jumu'ah usually replaces." *Id.*

The undersigned finds that Defendants have demonstrated that prohibiting Muslim inmates from using empty cells to perform their daily prayers and requiring inmates to arrive at a certain time to attend the Jumu'ah service are related to legitimate penological interests. The undersigned also finds that Defendants have set forth specific security concerns related to

11

unscheduled gathering of inmates and uncontrolled movements of inmates from one area of the prison to another area, and that these restrictions are reasonably related to legitimate penological interests and are therefore not unconstitutional. The undersigned further finds that Plaintiff has failed to set forth any evidence, other than examples previously addressed by the court, that he has otherwise been prevented from practicing his religion. Therefore, it is recommended that Defendants be granted summary judgment as to Plaintiff's claims regarding his religious practice.

### 6. Grievance Process

Plaintiff asserts that Defendant Montouth failed to processes his grievance "even though he initiated the correct process." ECF No. 1 at 4. Plaintiff also argues that Defendant Montouth "violated [his] first amendment rights [] when she retaliated against Plaintiff by not processing his grievance." ECF No. 1-6 at 1. Defendants argue that although Plaintiff's grievance, ECI-0775-10, was initially returned as unprocessed, "the grievance was re-opened and processed" and Plaintiff was therefore able to "avail himself of the grievance process." ECF No. 88-1 at 27. Defendants also argue that even if Defendant Montouth acted improperly that such actions do not "give rise to a civil cause of action." *Id.*

Inmates do not have a constitutionally protected right to a grievance procedure within the prison system under the First Amendment, the Due Process Clause, or any other statute. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a

12

grievance timely determined within the prison system. Accordingly, the undersigned recommends that this claim be dismissed.

  II.  Plaintiff's Motion to Dismiss and Motion for Default Judgment

Plaintiff moves to dismiss Defendants' Amended Motion for Summary Judgment and seeks an entry of default judgment. ECF No. 114 at 8. Plaintiff contends that Defendants have "willfully acted in bad faith in the discovery process" when Defendants "sent Plaintiff a partial response to his first set of interrogatories and first request for production of documents." *Id.* at 2. More specifically, Plaintiff argues that Defendants' response that Interrogatory No. 16 was "overbroad and unduly burdensome and not relevant to the case" was improper because the court's ruling "ordered the Defendants to fully answer interrogatory No. (16)."[5] *Id.* Plaintiff further contends that Defendants' response to his Request for Production No. 7 was in bad faith when Defendants contended that they "did not have in their possession any Inmate Request to Staff forms that was sent to Chaplain Mutakabbir by Plaintiff in (2011)." *Id.* at 3. Plaintiff avers that Defendants did not contact Chaplain Mutakabbir to ask if he had any of Plaintiff's Request to Staff forms or who might possess these forms. *Id.* Plaintiff argues that Defendants' behavior is egregious and warrants the "severe sanctions of dismissal and entry of default judgment for failure to obey discovery orders." *Id.* at 4.

In response to Plaintiff's Motion to Dismiss and Motion for Default Judgment, Defendants argue that they have "not engaged in any discovery abuse, much less the high level of abuse necessary for the imposition for the drastic remedy of a default judgment." ECF No.

---

[5] The undersigned notes that although Plaintiff's argument addresses Defendants' response to Interrogatory No. 16, Defendants' answer to Interrogatory No. 16 required a "yes" or "no" response, to which Defendants replied "yes." ECF No. 114-2 at 5. It would appear, based on Defendants' answer to Interrogatory No. 17 and the parties' respective arguments, that Plaintiff is actually concerned with Defendants' response to Interrogatory No. 17.

115 at 3. Defendants contend that they timely responded to the designated discovery requests as outlined in the court's March 6, 2013 Order. *Id.* at 1. Defendants contend that they received a letter from Plaintiff on April 15, 2013 "stating generally that he was not provided with a copy of a report from the SCDC correspondence committee regarding the Quran and correspondence between [Plaintiff] and the Division of Operations regarding Grievance No. LCI-1689-06, and that Defendants had failed to fully answer Interrogatory 17." *Id.* Defendants aver that upon receipt of Plaintiff's letter that their counsel contacted "various SCDC personnel in an effort to obtain the requested information," but no further responsive documents were located. *Id.* Defendants further contend that their partial objection and response to Interrogatory No. 17, that objected to producing information regarding prior cases for Defendant Montouth before January 1, 2011, was appropriate. *Id.* Defendants argue that the court's March 6, 2013 order "was not ruling on specific objection[s] by the Defendants, and was instead only ruling on the Defendants' request to be protected from answering discovery prior to the resolution of Defendants' dispositive motion." ECF No. 115 at 2. Defendants finally argue that they contacted Imam Mutakabbir after receiving Plaintiff's Motion and Imam Mutakabbir's search of his records "did not result in the discovery of any additional documentation." *Id.* at 3.

Rule 37(b)(2) governs the imposition of sanctions for failure to comply with a discovery order, stating in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following: . . . (vi) rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(vi). The undersigned has reviewed the parties' arguments and finds that Defendants have responded to discovery and produced all the documents responsive to

14

Plaintiff's discovery requests that were in their possession as directed by the court's order. Accordingly, Defendants have not acted in bad faith concerning the discovery process and Rule 37 sanctions are not appropriate. Accordingly, the undersigned recommends that Plaintiff's Motion to Dismiss and Motion for Default Judgment, ECF No. 114, be denied.

III. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Amended Motion for Summary Judgment, ECF No. 88, be GRANTED, and Plaintiff's Motion to Dismiss and Motion for Default Judgment, ECF No. 114, be DENIED. If the court accepts these recommendations, Plaintiff's Motion to Appoint Counsel, ECF No. 136, will be moot.

IT IS SO RECOMMENDED.

August 9, 2013  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**